ESTATE OF HALVERSON: HALVERSON and others, Contestants, Appellants, vs. NELSON, Executor, and another, Respondents.*

*May 4—June 8, 1954.*

* Motion for rehearing denied, with $25 costs, on October 5, 1954.

For the appellants there were briefs and oral argument by *Richard R. Rynders* of Madison, and *Lloyd A. Schneider* of McFarland.

For the respondents there was a brief by *McDonald & MacDonald* of Madison, and oral argument by *James B. MacDonald*.

MARTIN, J.   It was the testimony of Bennie, John, and Andrew Halverson that on the day after their father's funeral the five heirs met at the office of Robert N. Nelson, at which time Mr. Nelson read the will and presented a paper which he asked them to sign; that Nelson explained the paper meant that he would be appointed administrator and that it was not important but it would make it easier and quicker; that the paper presented to them was not filled in; that they did not read it and Nelson did not read it to them.

Nelson testified that he drew the will for the decedent on May 13, 1952, and that it was executed in his office. He further testified that on the day the heirs came to his office

"the will was read by me, as I remember it, and after it was read, I let them look at it, and they all took a look at it, and I explained it, I explained the will, and I said, 'Now, this will will have to be filed, and a petition made for probate, and a notice published as to time and place of hearing, and notice given to all interested parties, but at least you can waive that, if you wish.' And I had—I knew they were coming in, and I had the waiver laying on my desk, and filled in as far as the title and so on was concerned, and the other, that was blank, of course. And after some talk between them and so forth, they all signed the waiver."

The testimony presented a question of fact for the trial court. In its decision the court reviewed such testimony in detail and concluded that the evidence would not support a finding that the contestants were induced to sign the waiver by fraud and that if they did not know what they were doing when they signed it, they should have known.

The waiver is the usual printed form of waiver of notice which requires the filling in of names, dates, etc., for completion in the particular case. We cannot see that it is material whether all the blank spaces were filled in or not prior to the signing. The heirs knew that it was to be used in connection with the will that had just been read to them. The printed form, if not filled in at all, bears the words "Waiver of notice" at top and bottom; and it clearly indicates, among other things, that it relates to application for the probate of the will and that persons signing it would "enter our appearance and waive any and all notice of such application, and consent to an immediate hearing in said matter without further notice." All the information the heirs needed to advise them that they were signing a waiver of notice and consent to hearing on the probate of the will was before them as and when they signed. The printed form contains all the material information required.

There being a conflict in the testimony as to what Nelson's "explanation" of the waiver was, it was for the trial court to decide whether or not the contestants should have known and understood what they were doing when they signed it. There is ample evidence to sustain the trial court's finding.

Appellants further contend that the court had no jurisdiction as to them at the time the will was admitted to probate since the waiver form was signed prior to the filing of the petition for probate. The contention is without merit. Sec. 310.05 (1), Stats., provides:

"Upon making application for the probate of a will or for letters of administration, if all parties interested enter their appearance in writing, waive the notice required in sections 310.04 and 311.03, and consent to an immediate hearing, letters testamentary or of administration may be granted as if notice had been given."

Appellants contend that the object of the statute is to permit heirs to waive notice *after* a petition is filed. There is no contention that the waiver was filed prior to filing of the will. The will being on file at the time the waiver was presented, the court had jurisdiction over the parties and the waiver was effective since none of the contestants revoked it prior to the date it was filed.

Further questions are presented with respect to exclusion of certain testimony on the issue of the testator's competency, but we need not go into them in view of our opinion that appellants had waived their right to contest the will.

*By the Court.*—Order affirmed.

FAIRCHILD, C. J. (*dissenting*). This is a proceeding to reopen the order admitting the will of the testator to probate. The application was made by four of his five children. It was their desire, if the matter was reopened, to challenge the

validity of the will because of alleged mental incompetency of the testator at the time of the execution of the will. The grounds for the application were that the applicants misunderstood the effect of signing the blank waiver of notice of hearing. The executor named in the will, an attorney, testified that he explained the matter to them. The applicants testified that in spite of the explanation they failed to understand the purpose thereof. The majority opinion concludes that this raises an issue of fact which was resolved by the county judge. I do not agree. Both stories are consistent. The matter was explained. The applicants still did not understand. A review of the testimony describing the signing of the waiver shows not only confusion in the minds of the applicants but a complete misunderstanding of the purpose and effect of attaching their signatures thereto. In its memorandum decision the trial court said:

"Petitioners, however, declare that they were not aware of the nature of the waiver nor would they have signed it if they had known that thereafter they could not contest the will. If in fact they were induced to sign a waiver by fraud, they were entitled to a rehearing. Ordinarily in seeking relief from a fraud it is incumbent upon the persons seeking such relief to show not only that a fraud has been perpetrated but that they have shown diligence, or rather absence of affirmative negligence.".

Later the trial court stated that the evidence would not support a finding that the four petitioners were induced to sign the waiver by fraud and that the evidence of fraud was not clear. I do not think that the applicants should be required to show fraud. They did not allege fraud in their application and rested it solely upon their misunderstanding of the effect of signing the waiver of notice in the attorney's office at his request. This court has held many times that

statutes permitting the reopening of orders and judgments should be liberally construed. In most instances interested parties are permitted to reopen judgments and orders by showing mistake or excusable neglect. The testimony, in my opinion, clearly showed that the applicants were entitled to have their day in court, and that the denial is an improvident exercise of discretion by the trial court.

I am authorized to state that Mr. Justice BROADFOOT and Mr. Justice CURRIE concur in this dissent.